**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

**FILED**
February 3, 2006

**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| **CLIFFORD BROWN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 7:03-cv-0205** |
| | § | |
| **DON PETERSON AND NORTH** | § | |
| **CENTRAL TIRE SERVICE, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Clifford Brown, has sued Defendants, North Central Tire Service, Inc. and Don Peterson for employment discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*  On January 13, 2006, Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) & (b)(6) of the Federal Rules of Civil Procedure.  That motion is now before the Court.  For reasons explained below, the Court **GRANTS, IN PART, and DENIES, IN PART,** Defendants' motion.

### I. BACKGROUND

Plaintiff, Clifford Brown, was employed by Defendant-North Central Tire Service, Inc. ("North Central Tire") from April 2001 until December 19, 2001.  First Am. Compl. ¶12.  Brown worked as Assistant Service Manager, Safety Officer, and Trainee.  *Id.*  Defendant-Don Peterson was president of North Central Tire. The company was managed by Peterson's son-in-law, Rick Stone.  *Id.* ¶14.  His wife, Tiffany Stone, worked as the company's accountant. *Id.*

Brown alleges that he noticed a hangman's noose displayed above a spreader machine during his first week at North Central Tire.  *Id.* ¶15.  Brown claims to have approached Rick Stone

about the noose. *Id.* ¶16. Brown claims that Stone told him that he was "going to have to learn how to get along with the rest of the employees" if he wanted to continue working at North Central Tire. *Id.* Brown alleges that he then took the rope down and threw it in the trash. *Id.* ¶17. He then was approached by Bobby Duram, another supervisor, who asked him where his noose had gone. *Id.* ¶13, 17.

A meeting was held between Brown and his employer following the noose incident. *Id.* ¶18. Brown states that he believed that all problems had been resolved at the meeting, but other discriminatory incidents soon followed. *Id.* ¶18, 19-27. On one occasion, Brown claims that Rick and Tiffany Stone falsely told Defendant, Don Peterson, that Brown had been fired from North Central Tire for sealing casings when he previously worked at the company in 1999. *Id.* ¶19. Instead, Brown contends that he had quit. *Id.* Don Peterson then reportedly made several statements to Brown suggesting that the company was "going after someone who was stealing from the business." *Id.* ¶20.

Brown alleges that another incident occurred when he and a coworker were listening to music. Rick Stone reportedly told Brown and his coworker to turn down their "jungle music." *Id.* ¶21. At that point, Brown alleges that Stone put on country music and played it as loud as possible. *Id.* Afterward, Brown alleges that the music was only turned up to half volume, but that Stone called back to where he was and once again told Brown to turn down his "jungle music." *Id.* ¶22.

Thereafter, Brown claims that he had confronted Rick Stone about the sale of casings, Brown's complaints about the noose, and Stone's reference to Brown's music as "jungle music." *Id.* ¶23. Additionally, Brown alleges that he complained to management about what he perceived to be discriminatory pay raises. Brown alleged that non-Black employees who completed training

2

were given pay raises to compensate them at a level on par with Black employees.

Brown was terminated on December 19, 2001 after complaining about not receiving a pay increase. Id. ¶27. He had complained to management after learning that non-Black employees who were hired by him and working under him had been given a raise to $9.50 per hour, $0.50 more than the stagnant $9.00 per hour that he received. *Id.* Brown contends that even the manner in which he was terminated was discriminatory. Unlike other employees, Brown alleges that Black employees were terminated without the progressive discipline enjoyed by white employees since Black employees were terminated on less than three write-ups, just like when he was fired. *Id.* ¶26.

On April 25, 2002, Brown filed a charge of racial discrimination with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC") against North Central Tire Service and another employer. Brown's charge was designated charge number 310A201863. *See* Def.'s Ex. A. The standard EEOC charge form instructs complainants to check the appropriate box or boxes for the cause of discrimination alleged. Mr. Brown checked only the box for "race." *Id.* Brown amended his charge of discrimination on May 12, 2002, but, again, he did not mark any other box to signify that he was basing his claims on another theory of discrimination. *See* Def.'s Ex. B.

A space on the form asked for the "particulars" of the complainant's claims of discrimination. In that space, Brown wrote a narrative alleging the following acts of discrimination: (1) he was terminated for asking for a raise; (2) unlike other employees, African American employees were terminated without the progressive discipline enjoyed by white employees (e.g., Black employees were terminated on less than three write-ups); (3) non-Black employees being trained received raises to compensate them at a level on par with the salaries of Black employees;

(4) he was accused of stealing tires, presumably because of his race;  (5) two of Brown's employers, "Rick Stone and Bobby [Duram]," directed racial slurs at him by "always telling him to turn down [his] jungle music"[1]; (6) a "hanging man's noose" was displayed in the shop in which he worked; and (7) Brown was confronted by Stone, his supervisor, and questioned about where Stone's noose was after Brown had removed it and thrown it in the trash.  *See* Def.'s Ex. A & B.

Neither the original nor the amended charge of discrimination explicitly mention Don Peterson.  The original charge of discrimination and the amended charge does not contain Peterson's name or any description of any alleged discriminatory acts performed by Peterson.  The EEOC never issued Brown a right to sue letter against Peterson.

By letter dated September 9, 2002, the Dallas office of the EEOC dismissed Brown's charge and provided him with notice of his right to sue.  The letter explained that the Commission had investigated the complaint and had determined that it was unable to conclude that a statutory violation had occurred. *See* Def.'s Ex. C.  The letter then informed Brown that he had only 90 days to file a lawsuit.

Brown protested the dismissal to EEOC officials in Washington D.C. since claimed that no investigation was ever made into his claims.  As a result, the EEOC rescinded its no cause determination on October 8, 2002.  The letter stated that the Commission's September 9 notice was

---

[1] The Court takes judicial notice that, historically, the term "jungle music" has been a racially derogatory term for music like jazz, rhythm and blues, and, most recently, rap.  A Google search of the phrase "jungle music" with the terms "Black" and "racism" reveals that several well-known hate groups frequently use the term.  Also, other courts, including one in this district, have assumed that the phrase "jungle music" is racially derogatory and actionable under Title VII.  *See Rhone v. Texas Dept. of Transp.*, 1997 WL 560770 (N.D.Tex. 1997); *Kerrison v. Kane Community Hosp.*, 2000 WL 33223084 (W.D.Pa. 2000).

4

in error and that Brown's charge would be reopened for further processing.[2]  *See* Def.'s Ex. D.

On reconsideration, the EEOC conducted an investigation into Brown's claims and issued a notice of determination on April 21, 2003.  The EEOC found that there was an insufficient basis on which to proceed on Brown's claims that he was terminated because of his race and was subject to discriminatory allegations of stealing tires.  The Commission also determined that the same was true for Brown's claims of discriminatory pay raises, finding no basis to believe that raises were being given in a discriminatory manner.[3]  As a result, the EEOC issued Brown a right to sue on those claims.  The letter specifically stated that Brown, as the charging party, had ninety (90) days from the date of receiving the notice to file a civil action against the respondents named in the charge on those claims.  *See* Def.'s Ex. E.

The Commission did, however, find reasonable cause to believe that North Central Tires failed to maintain an working environment free from racial harassment.  *See id.*  It specifically cited the "jungle music" slur and the hangman's noose as evidence of a hostile work environment.  *Id*. For that reason, the Commission refrained from issuing a right-to-sue notice until the parties attempted to conciliate the dispute.

Attempts at conciliation failed.  Therefore, on July 1, 2003, the EEOC issued its notice of right to sue on Brown's hostile work environment claim. See Def.'s Ex F.  Brown ultimately filed his Original Complaint against Don Peterson and North Central Tire Service, Inc. on October 2, 2003.  On June 7, 2004, Plaintiff filed his First Amended Complaint which included an assault

---

[2]The letter actually stated the following: "This charge is hereby re-opened and both parties are hereby notified that this charge is reopened for further Comission processing with respect to the hostile environment issue. The Notice of Right to Sue is rescinded."  Def.'s Ex. D.

[3]The Commission also found no cause to believe that the other employer that had been charged was liable for violating Title VII.

charge brought by Brown's fifteen year old daughter against Don Peterson, who allegedly yelled at her and grabbed her by her clothing while she exited a classroom at Wichita Falls High School. The Court subsequently dismissed the assault claim for lack of jurisdiction.

## II. ANALYSIS

Defendant has moved to dismiss several of Brown's claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Hamlett v. Ashcroft*, 2004 WL 813184 *2 (N.D.Tex. 2004) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Considering the Rule 12(b)(1) motion at the outset "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (quoting same). Accordingly, the Court will analyze Defendants' challenges to the Court's subject matter jurisdiction before proceeding to the merits of their Rule 12(b)(6) motion.

### A.      Subject Matter Jurisdiction

Defendants argue that the Court does not have subject matter jurisdiction over Brown's claims of discriminatory treatment and retaliation, in addition to all claims filed against Don Peterson in his individual capacity.

### 1.      Legal Standard under Rule 12(b)(1)

A motion to dismiss filed under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; therefore, they have the power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v.*

*Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998).  A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  The party wishing to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.  *See Rodriguez v. Texas Commission on the Arts*, 992 F.Supp. 876, 879 (N.D.Tex.1998) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.").

In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  A court must take the facts as true and resolve inferences and doubts in the plaintiff's favor. *In re Supreme Beef Processors, Inc.*, 391 F.3d 629, 633 (5th Cir. 2004).

There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): 'facial' attacks and 'factual' attacks.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Brooks v. Snow*, 313 F.Supp.2d 654, 658 (S.D.Tex. 2004).  A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges jurisdiction based solely on the pleadings.  *Weinberger*, 644 F.2d at 523.  When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction.  *Id.*  By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence that contradicts the jurisdictional allegations in

the complaint. *Id.* In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.*

### 2.    Exhaustion of Administrative Remedies under Title VII

The right to sue under Title VII is not absolute. A court may entertain a Title VII lawsuit only if the aggrieved party has (1) exhausted his or her administrative remedies and (2) has filed suit within the time permitted after receiving a notice of a right to sue. *See Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003); *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

Exhaustion of administrative remedies is ordinarily a jurisdictional prerequisite to a Title VII action.[4] *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (citing *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir.1980)). The Fifth Circuit has held that federal courts do not have jurisdiction to consider unexhausted Title VII claims. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam)). Exhaustion does not occur until the complainant files a timely charge with the EEOC and receives a "right-to-sue" letter.[5] 42 U.S.C. §§2000e-5(e),(f); *see also, Taylor*, 296 F.3d at 379.

After the aggrieved party receives a right-to-sue letter, he or she must file suit under Title VII within 90 days. *See* 42 U.S.C. § 2000e-5(f)(1); *Price v. Digital Equipment Corp.*, 846 F.2d

---

[4] The primary purpose of the exhaustion requirement is to allow the EEOC to investigate the charges made and attempt to resolve the dispute without litigation. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989).

[5] The right-to-sue letter confirms that the EEOC has had an opportunity to investigate the complaint; that all administrative remedies have been exhausted; and that the alleged aggrieved party may initiate an action in federal court. *See* 42 U.S.C. §2000e-5(f)(1); *Shabazz v. Texas Youth Comm'n*, 300 F.Supp.2d 467, 470 (N.D.Tex.2003).

1026, 1027 (5th Cir.1988). "The 90 day limit is strictly construed, [and] failure to abide by it will

result in dismissal...." *Azari v. Target Corp.*, 2005 WL 3299390 *3 (N.D.Tex. 2005) (citing *Taylor*,

296 F.3d at 379-80).  Unlike the exhaustion requirement, however, filing suit within the 90-day limit

is not a jurisdictional prerequisite.  *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1249 n.1

(5th Cir. 1985) (citations omitted).  Rather, the requirement is akin to a statute of limitations and,

as such, may be subject to tolling and waiver.  *Id.*

   In his complaint, Brown alleges that he has satisfied all conditions precedent to filing suit.

He states that he filed charges of discrimination with the EEOC, received right-to-sue notices on his

claims, and filed his lawsuit within the 90-day limit.  Defendants disagree, contending that they are

entitled to dismissal under Rule 12(b)(1) since Brown has not exhausted administrative remedies

on his retaliation claims and his claims against Don Peterson.[6]  The Court must now determine

whether Brown's claims were exhausted and, if so, whether Brown filed suit within 90 days of

receiving notice of his right to sue.

   A person filing an EEOC charge is not usually represented by counsel; therefore, the court

does not strictly construe an EEOC charge to require the complainant to have mentioned every

allegation of discrimination or every possible legal theory on which he or she may be able to sue.

*See Fine v. GAP Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) ("[T]his rule protects unlettered

lay persons making complaints without legal training or the assistance of counsel.") (citations

omitted); *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("[W]e construe

---

   [6]Defendants have also moved for Rule 12(b)(1) dismissal on Brown's claims of discriminatory treatment
and discriminatory termination because he failed to file suit within 90 days of receiving his right to sue letter.  As
stated previously, noncompliance with the 90 day filing deadline is not a jurisdictional bar to suit since the deadline
may be equitably tolled.  Rather, the Fifth Circuit has held that the 90 day deadline functions as a statute of
limitations.  Consequently, the Court will construe Defendants' Rule 12(b)(1) motion on Brown's discrimination
claims as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See infra.*

employment discrimination charges with the utmost liberality..."); *Sanchez v. Standard Brands*, 431 F.2d 455, 462-63 (5th Cir. 1970) (Under Title VII, it is "inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations...").

Consequently, in determining whether a particular Title VII claim has been exhausted, it is important to note that a Title VII lawsuit "may extend as far as, but not further than, the *scope* of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine*, 995 F.2d at 578 (emphasis added). In other words, a Title VII complaint "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Id.* (citation omitted); *accord*, *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *National Ass'n of Gov't Employees*, 40 F.3d at 711-12; *see also, Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990) (citing *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970)).

### a.    Brown's Retaliation Claims

With respect to Brown's retaliation claim, Defendants correctly note that Brown's original and amended EEOC charges do not explicitly allege that he was subject to unlawful retaliation for protected EEO activity. The term "retaliation" is not mentioned anywhere within Brown's charges. Moreover, when asked to specify the grounds for his charge on the preprinted forms (i.e. "cause of discrimination"), in both instances Brown checked only the box for "race" and not the box for "retaliation." *See* Def.'s Ex. A & B.

Contrary to what Defendants argue, these observations are not fatal to Brown's retaliation claim. *See Sanchez*, 431 F.2d at 463 ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one--not even the unschooled--should be boxed out."). The Fifth Circuit has held that "the crucial element of a charge of discrimination is the factual statement contained therein." *Manning v. Chevron Chem. Co., L.L.C.*, 332 F.3d 874, 879 (5th Cir. 2003).

Because the term retaliation is not mentioned anywhere in Brown's EEOC charge, the Court must now determine if Brown's retaliation claim is "within the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *See, e.g., Young v. City of Houston*, 906 F.2d at 179; *Gibbons v. Leggett & Platt, Inc.*, 2002 WL 31245373 *1 (N.D.Tex. 2002); *Tisdale v. Federal Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). "Therefore, where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Tisdale*, 415 F.3d at 527 (citation and internal quotation marks omitted).

Courts that have confronted situations similar to this one have proceeded by determining whether the facts alleged in the employee's EEOC charge were sufficient to put a reasonable EEOC investigator on notice of a potential retaliation claim, even though the claimant failed to check the appropriate box for retaliation or otherwise use the term within his or her factual narrative. *See, e.g., Tisdale v. Federal Express Corp.*, 415 F.3d 516 (6th Cir. 2005); *Macri v. Newburgh Enlarged City School Dist.*, 2004 WL 1277990 (S.D.N.Y. 2004); *Gardner v. St. Bonaventure Univ.*, 171 F.Supp.2d 118 (W.D.N.Y. 2001); *Ausfeld v. Runyon*, 950 F.Supp. 478 (N.D.N.Y. 1997). In essence, those courts have held that if the allegations in the narrative are found to be sufficient to have put an

investigator on notice of a retaliation claim, then the claim will be deemed to have been exhausted, thereby avoiding dismissal.  However, if the retaliation claim is not so readily apparent from the narrative, then the claim will be dismissed.

In *Macri v. Newburgh Enlarged City School Dist.*, 2004 WL 1277990, a female janitor filed an EEOC charge against her employer for sex discrimination and hostile work environment after she was not promoted.  After receiving her right-to-sue notice, she included a claim of retaliation in her Title VII complaint.  The Defendant then moved to dismiss the retaliation claim for failure to exhaust.  Although the court recognized that she "did not check the box marked 'Retaliation' in her charge," it found that the narrative that she provided contained sufficient facts supporting a retaliation claim.  *See id*. at *16.  The narrative described how she made "repeated complaints" to her employer and then alleged that she was denied a promotion one month after her last complaint.  *See id*.  "Accordingly," the court found, "the EEOC investigation of her charge could reasonably be expected to have explored a possible retaliatory motive for the denial of that promotion, which means that [she] may pursue claims related to this... promotion despite her failure to exhaust them."  *Id.*[7]

In *Ausfeld v. Runyon*, supra, a district court for the Northern District of New York held that although the plaintiff failed to mention that she intended to sue on the theory of retaliation in her EEOC charge, she had provided the Commission with sufficient information in her narrative such that the scope of the EEOC's investigation should have included allegations of retaliation.  The narrative mentioned that the plaintiff was subjected to threats and intimidation after she had reported

---

[7]In so ruling, the Court in *Macri* cited to *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003), for the proposition that "a plaintiff need not exhaust claims that would fall within the scope of EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  This standard is the same standard that applies in the Fifth Circuit.

her supervisor's inappropriate sexual conduct to management.

The Western District of New York made a similar ruling in *Gardner v. St. Bonaventure University*, *supra*, finding that a woman who was terminated after complaining of sexual harassment "most naturally" had a claim of retaliatory discharge, even though she made no mention of retaliation in her EEOC complaint. *Id.*, 171 F.Supp.2d at 124. The court "logically construed" the plaintiff's claims of sexual harassment against various individuals as a retaliation claim based on her complaints to management before she was terminated. *Id.* at 123.

Likewise, in *Tisdale v. Federal Express*, *supra*, the Sixth Circuit Court of Appeals ruled that a Title VII plaintiff would not be precluded from raising a retaliation claim in his lawsuit arising from an alleged discriminatory termination, in part because the plaintiff's retaliation claim "contain[ed] the same common core of operative facts" as his discrimination claim –"specifically, that [the plaintiff] was terminated after complaining about the treatment of African American employees in a public meeting." *See id.*, 415 F.3d at 528. The Sixth Circuit ruled that a seasoned EEOC investigator would have known to have investigated a retaliation claim on the facts of his claim:

> By stating that he was discharged and that he believed race played a role coupled with the inference that he told the EEOC that he had complained about the treatment of African American employees... a seasoned EEOC investigator would be naturally prompted to investigate the uncharged retaliation claim despite the procedural shortcomings in the formal charge. Thus, we hold that the retaliation claim could reasonably be expected to grow out of the charge of discrimination...

*Id.*

This case should be decided similarly. As explained below, the Court finds that Brown's retaliation claim is within the scope of the investigation that reasonably would have been expected to grow out the facts that he alleged in his narrative. Brown's narrative states the following:

13

On 12-9-02, I was terminated from my employment... because I asked for a raise.
   ...
I have also been subjected to racial slurs during my *employment by* Rick Stone and Bobby LNU [last name unknown]...  I worked in a shop where there were [*sic*] a hanging man noose.  *When I removed the handing man noose and threw it in the trash*, I was approached by Bobby LNU, and he questioned me to where [*sic*] was *his* hanging rope.

Def.'s Ex. A & B (emphasis added).  These allegations support several causes of action under Title VII, including a prima facie case for a claim of retaliation or retaliatory termination.[8]

The passage states that Brown became aware of the hangman's noose at his workplace.  He then took it upon himself to remove the offensive item from where it was displayed and dispose of it.  The narrative then reports that one of Brown's "employ[ers]," Bobby LNU, later confronted him and asked him where *his* (the employer's) noose had gone.  Ultimately, Brown alleges that he was subjected to other forms of discriminatory conduct and terminated.  By stating that he was discharged; that he believed race played a role in his termination; and that he had protested working conditions at the shop by throwing away the noose with his employer's knowledge, the Court believes, like the Sixth Circuit in *Tisdale*, that "a seasoned EEOC investigator would [have been] naturally prompted to investigate the uncharged retaliation claim despite the procedural shortcomings in [his] formal charge."  *Cf. Tisdale*, 415 F.3d at 528. Like the Plaintiff in *Tisdale*, Brown's retaliation claim arose from "the same common core of operative facts" as his other claims, making it all the more remarkable that his EEOC investigators did not evaluate the merits of a

---

[8]To establish a prima facie case of retaliation, a plaintiff must show that (1) he or she was engaged in protected activity; (2) he or she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).  "With respect to the first element..., '[a]n employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII."  *Hamlett v. Gonzales*, 2005 WL 1500819 * 17 (N.D.Tex. 2005) (quoting *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)).

retaliation claim.

A reasonable EEOC investigator may have considered Brown's removal of the noose to have been protected activity under Title VII's anti-retaliation provision.  The text of §2000e-3(a) states that an employee has engaged in protected activity when he has "*opposed* any practice made an unlawful practice under [Title VII]," or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  *See* 42 U.S.C. § 2000e-3(a) (emphasis added); *see also, Hamlett v. Gonzales*, 2005 WL 1500819 * 17 (N.D.Tex. 2005).  By removing the noose and trashing it, Brown was resisting what any reasonable person would have perceived to be a racist symbol.  Moreover, Brown's narrative suggests that his employers were aware that he was protesting the noose's display in the workshop, especially since Brown was later approached by a supervisor about its whereabouts.

The Court recognizes that not all oppositional activity is protected by Title VII.  "[S]ome conduct, even if in sincere opposition to unlawful employment practices under Title VII, may be so disruptive or inappropriate as to fall outside the protections of [Title VII's anti-retaliation provision]."  *Jones v. Flagship International*, 793 F.2d 714, 728 (5th 1986).  The Fifth Circuit has adopted a balancing test in determining whether particular conduct is protected oppositional conduct.  The employee conduct be reasonable under the circumstances, and "the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare."  *Shabazz v. Communication Workers of Am./Texas State Employees Union*, 2005 WL 17658 * (N.D.Tex. 2005) (citing *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 233 (1st Cir. 1976); *Jones*, 793 F.2d at 728 (citing *Jeffries v. Harris County Community Action Assoc.*, 615 F.2d 1025, 1036 (5th Cir. 1980)).

*Assuming only the truth of Brown's narrative* and considering the Fifth Circuit's balancing test for determining if oppositional conduct is protected by Title VII, the Court finds that Brown's decision to remove the hangman's noose and throw it away is protected oppositional activity under §2000e-3.[9]  Brown's conduct was not was so disruptive or inappropriate that it fell outside the protections of Title VII.  His actions were not contrary to law and did not breach the peace.  They also did not interfere with his employer's business.  Based on these limited, uncontested facts, the Court believes that Brown's actions were reasonable under the circumstances and that the balance of interests tips decidedly in Brown's favor.

A hangman's noose is a loathesome symbol of hatred in its most evil form, a relic of a terrible historical legacy of slavery, oppression, and mass murder, akin to the devilish symbols of a burning cross or a Nazi swastika.[10]  A hangman's noose has no business in a workplace.  It serves no purpose but to intimidate Black employees and remind them of a violent history of slavery, oppression, and mob lynchings during the most deplorable moments in America's tortured racial history, the remnants of which Title VII is designed to rectify and overcome.[11]  For that reason,

---

[9]Nothing in this opinion should be construed as the Court's ultimate factual finding on whether Brown's conduct was protected oppositional activity.  That is not to say that this Court has already made a factual finding on this issue.  That issue will ultimately be resolved at trial.

[10] In one recent oral argument before the Supreme Court concerning a cross burning by he Ku Klux Klan, Justice Thomas, the only African American sitting on the Court, angrily disputed counsel for the State of Virginia's claim that a burning cross was protected speech.  The symbol, he said, was "unlike any symbol in our society."  Oral Argument of *Virginia v. Black*, 2002 WL 31838589 at *23 (Thomas J.).  "[T]here was no other purpose to [the Ku Klux Klan's cross-burning], no communication of a particular message. . . . It was intended to cause fear and to terrorize a population."  *Id.* at *22-24 (Thomas J.).  The Court believes that a hangman's noose should be viewed in the same vein.

[11] The intertwined history of mob lynching and cross burning is well documented.  "The first known cross burning in the country... occurred a little over one month before the [Ku Klux] Klan['s] initiation, when a Georgia mob celebrated the lynching of Leo Frank by burning a 'gigantic cross' on Stone Mountain that was 'visible throughout' Atlanta."  *Virginia v. Black*, 538 U.S. 343, 354 (2003) (citation omitted).

Brown appears to have been justified in resorting to self help.

As described in his narrative, Brown's conduct expressed a grievance against his workplace by removing the noose and discarding it. This conduct did not appear to have interfered with his employer's right to run his business. If anything, Brown's conduct expressed a serious concern about the legality of the work environment at North Central Tire Service. Even if a disruption had occurred, any interference with the employer's business would have been minimal. Brown's actions of picking up the noose and throwing it in the garbage probably took no longer than a few moments, and there is no other evidence in the narrative suggesting that the supervisor's confrontation about the noose escalated into violence. Furthermore, any time that Brown's employer spent conciliating the dispute internally would also protected by Title VII and should not be considered to be a "disruption." See, e.g., 42 U.S.C. §2000e-3; *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997), cert. denied, 523 U.S. 1122 (1998).

For these reasons, Brown's retaliation claims fall within the scope of EEOC investigation which can reasonably be expected to grow out of his charges of discrimination. The Fifth Circuit has held that "a district court has 'ancillary jurisdiction' to hear a claim of retaliation, even though not filed with the EEOC, 'when it grows out of an administrative charge that is properly before the court.'" *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir. 1991) (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). Therefore, the Court concludes that it has supplemental jurisdiction over Brown's retaliation claim and that the claim is properly before the Court. Consequently, Defendant's Rule 12(b)(1) motion to dismiss is denied.

### b.   Petersen's Individual Liability under Title VII

Defendants contend that Plaintiff has failed to exhaust his administrative remedies against

17

Defendant Don Peterson. Def.'s Mot. Br. at 8. They argue that Peterson is not mentioned anywhere in Brown's EEOC charges, and the right to sue letter that Brown received did not contemplated Peterson as a potential defendant in a Title VII lawsuit. *Id.* Defendants also emphasize that even if a charge were presumed to exist against Peterson, Brown failed to file suit against him within the relevant limitations period established by Title VII. *Id.*

The Court agrees that the claims against Peterson should be dismissed, but not for the reasons stated in Defendants' motion. The Court declines to decide the novel question of whether an individual Title VII claim against Peterson would have reasonably been expected to grow out of the investigation arising from the narrative in Brown's EEOC charge. Instead, the Court notes that even if it were to have jurisdiction over Brown's claims against Peterson, it would have to dismiss them for failure to state a claim upon which relief may be granted. Despite the clear statutory language of Title VII,[12] the Fifth Circuit has explicitly held that a plaintiff cannot proceed against both an employer and its agents in the same Title VII lawsuit. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999); *Jackson v. Associates Credit Card Services, Inc.*, 2002 WL 742602 *2 (N.D.Tex. 2002). For that reason, Brown cannot maintain a Title VII claim against both Peterson and North Central Tire. Accordingly, Brown's claims against Peterson are hereby dismissed.

### B.    Failure to State a Claim

---

[12]Title VII prohibits discrimination by an "employer" on the basis of race. 42 U.S.C. §2000e-2. Title VII defines "employer" as "a person engaged in an industry affecting commerce ... and any agent of such a person." 42 U.S.C. § 2000e(b). At first glance, the term "agent" in §2000e(b) seems to provide an independent means of establishing individual liability against a corporate agent under Title VII. However, the Fifth Circuit explained in *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994), that the term "agent" was included in §2000e(b) solely to incorporate respondeat superior liability into Title VII and not to provide an independent cause of action against agents in their individual capacity. *Id.*

In their motion to dismiss, Defendants argue that Brown's harassment and hostile work environment claims should be dismissed under Rule 12(b)(6) since "he did not sufficiently plead that the alleged isolated incidents of racially harassing conduct affected a term, condition or privilege of his employment." Def.'s Mot. at ¶14.  Consequently, they argue, the claim should be dismissed since Brown "failed to plead an essential element of his prima facie racial discrimination case..." *Id.*

### 1.      Legal Standard under Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted.  *See Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant.  *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle it to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994).  The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 571 (N.D.Tex. 1997).

"While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir.1994). "[C]onclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also, Taylor*, 296 F.3d at 378.

In ruling on a Rule 12(b)(6), "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). The court may, however, "take judicial notice of documents in the public record... and may consider such documents in determining a motion to dismiss." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (citing *Lovelace*, 78 F.3d at 1017-18). The only limitation is that the documents "should be considered only for the purpose of determining what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (citing *Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344, 1354-55 (7th Cir. 1995)); *see also, In re Azurix Corp. Securities Litigation*, 198 F.Supp.2d 862, 877 (S.D.Tex. 2002).

Here, Defendants listed the defense of failure to state a claim as an affirmative defense in their responsive pleadings. For that reason, the Court finds that they properly preserved the right to file a motion to dismiss under Rule 12(b)(6), even though they have already filed a prior motion to dismiss under Rule 19. *See Delhomme v. Caremark Rx, Inc.*, --- F.R.D. ----, 2005 WL 36815466 *2 & n.2 (N.D.Tex. 2005) (Buchmeyer, J.) (finding that defendants could file a post-answer Rule 12(b)(6) motion since they had preserved their right to file raised included failure to state a claim as an affirmative defense in their responsive pleadings). The Court now turns to the merits of Defendants' Rule 12(b)(6) motion.

## 2.      Discriminatory Pay Raise and Termination Claims

The Court now determines if Brown's claims of discriminatory pay raises and discriminatory termination are subject to dismissal under Rule 12(b)(6) for lapse of the ninety day limitations period for filing suit under Title VII.

The EEOC sent Brown a letter of determination and a right to sue notice on his claims of discriminatory pay raises and discriminatory termination on April 21, 2003.[13]  Applying the Fifth Circuit's mailbox rule, the Court will presume that the letter of determination was received on April 24, 2003, three days after it was mailed.  *See Taylor*, 296 F.3d at 379; *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984) (presuming the plaintiff received a right-to-sue letter three days after delivery based upon Rule 6(e) of the Federal Rules of Civil Procedure).  The letter explicitly stated that the document served as Brown's notice of his right to sue on the his pay raise and termination claims and even directed Brown to file suit within 90 days.

Brown does not dispute these facts in his responses to Defendants' motion.  Therefore, even viewing the facts in the light most favorable to Brown, the Court finds that Brown was required to file suit on these claims by July 24, 2003 at the very latest.  Brown did not file suit until October 2, more than two months after the 90 day deadline for filing suit had lapsed.  Because Brown failed to file suit within 90 days after receiving notice of his right to sue on his claims of discriminatory pay

---

[13]When the EEOC rescinds a right-to-sue notice in which it found no reasonable cause within 90 days of the decision and before the charging party has filed suit, the prior determination is vacated in its entirety, thereby revoking the charging party's right to sue within 90 days.  *See* 29 C.F.R. §1601.19. The charging party must then wait for the Commission's final reconsideration, after which the party will again have 90 days to file suit. *Id.*; *see also, Gonzalez v Firestone Tire & Rubber Co.*, 610 F2d 241 (5th Cir. 1980).  The right to sue notice issued on September 9, 2002 was rescinded by a notice of reconsideration that was filed on October 8, 2002.  *See* Def.'s Ex. D. Brown had not filed suit during that time.  Consequently, the notice of reconsideration prevented Brown from filing suit at any time prior to the Commission's decision on reconsideration.  The Commission issued its reconsidered ruling on April 21, 2003, after which Brown had 90 days to file suit on the claims that were dismissed by that order.

raises and discriminatory termination, the Court finds that those claims are time-barred and should

be dismissed pursuant to Rule 12(b)(6).  *See* 42 U.S.C. § 2000e-5(f)(1); *Taylor*, 296 F.3d at 379-80

(trial court did not err by dismissing claims under Rule 12(b)(6) when suit was filed 91 days after

plaintiff received right to sue letter).

### 3.    Hostile Work Environment Claim

Defendants contend that Brown failed to state a hostile work environment claim because "he

did not sufficiently plead that the alleged isolated incidents of racially harassing conduct affected

a term, condition, or privilege, of his employment."  Def.'s Mot. Br. at 7, 10-12.  Defendants are

mistaken.  It is not Plaintiff's burden to prove or plead every element of his claim in order to

withstand dismissal under Rule 12(b)(6).  Rule 8 of the Federal Rules of Civil Procedure states that

a complaint shall contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement need only "give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Swierkiewicz*, 534 U.S. at 507 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will

be subject to dismissal for failure to state a claim under Rule 12(b)(6) only if it fails to meet the

liberal pleading standard of Rule 8.  *See* 5B Wright & Miller, Federal Practice and Procedure Civil

3d §1356 (2004).[14]

The relevant portion of the complaint mentions that Brown "was subjected to racially

harassing language and conduct" and had "asserted" that that he had a "right to a workplace free of

racial harassment."  *See* First Am. Compl. ¶36. In support of this claim, Brown's factual statement

---

[14] The Supreme Court has ruled that Title VII complaints alleging employment discrimination need only satisfy "the simple requirements of Rule 8(a)." *Swierkiewicz*, 534 U.S. at 513.  In this regard, the Court has reiterated that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits."  *Id.* at 515.

stated that his music was derogatorily referred to as "jungle music"; that a "hanging noose" was displayed in his workplace; and that a supervisor confronted him about the whereabouts of "his" noose.  These allegations, Brown alleges, constitute "harassing conduct... [that] has been declared to be illegal in the work environment under... 42 U.S.C. §2000e *et seq*." *Id.*  These recitations explicitly mention Brown's legal theory – hostile "work environment" – and provide a short and plain statement of the facts upon which his claim rests.  Consequently, the Court finds that, with respect to Brown's hostile work environment claim, the complaint meets the minimum notice pleading requirements set forth in Rule 8.

Lastly, viewing the factual allegations in the complaint in the light most favorable to Brown (including his supervisor's ethnic slurs and their display of a hangman's noose in the company work area), the Court finds that Brown may be able to prove a set of facts that would entitle him to relief. *See* Campbell, 43 F.3d at 975.  As mentioned previously, the relevant question is not whether Brown will prevail but whether he is entitled to offer evidence to support its claims. *See Swierkiewicz*, 534 U.S. at 511.  Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Brown's hostile work environment claim is denied.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.  Accordingly, the Court enters the following rulings:

1.    Defendant's Motion to Dismiss Plaintiff's claims of discriminatory pay raises and discriminatory termination is **GRANTED**;

2.    Defendant's Motion to Dismiss all claims against Don Petersen in his individual capacity is **GRANTED**;

23

3.      Defendant's Motion to Dismiss Plaintiff's retaliation claim is **DENIED**;

4.      Defendants's Motion to Dismiss Plaintiff's hostile work environment claim is **DENIED**.

**It is so ORDERED.**

**SIGNED: February3, 2006**

_____
**JUDGE JERRY BUCHMEYER**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**